**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **AXCESS INSTRUMENTS IP HOLDING COMPANY,** | |
| **Plaintiff,** | **Case No. 2:25-cv-560** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MEDTRONIC PLC, MEDTRONIC, INC., MEDTRONIC USA, INC., MEDTRONIC XOMED, INC., AND INTERSECT ENT, INC.,** | |
| **Defendants.** | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Axcess Instruments IP Holding Company ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Medtronic plc ("Medtronic Ireland"), Medtronic, Inc. ("Medtronic USA Parent"), Medtronic USA, Inc. ("Medtronic USA"), Medtronic Xomed, Inc. ("Medtronic Xomed"), and Intersect ENT, Inc. ("Intersect") (collectively, "Medtronic" or "Defendant"), and alleges, upon information and belief, as follows:

**THE PARTIES**

1.    Axcess Instruments IP Holding Company is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 416 Mulberry Street, Tyler, Texas 75702.

2.    Upon information and belief, Defendant Medtronic plc is a corporation organized and existing under the laws of Ireland, having its principal office at 20 On Hatch, Lower Hatch Street, Dublin

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    1

2, Ireland, and its operational office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432.

3. Upon information and belief, and as alleged and shown below, Defendant Medtronic, Inc. is a corporation organized and existing under the laws of the state of Minnesota, having its principal office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432. Defendant, through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas.

4. Upon information and belief, and as alleged and shown below, Defendant Medtronic USA, Inc. is a corporation organized and existing under the laws of the state of Minnesota, having its principal office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432. Defendant, through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas.

5. Medtronic Ireland makes, uses, sells, offers for sale, and/or imports the Accused Instrumentalities.

6. Upon information and belief, Medtronic USA Parent, and along with its subsidiaries, including Medtronic USA, are all subsidiaries of Medtronic Ireland.

7. Upon information and belief, Medtronic Ireland directs and controls the decisions of Medtronic USA Parent and Medtronic USA regarding the Accused Instrumentalities. Indeed, two executive officers of Medtronic Ireland, CEO Geoff Martha and CFO Thierry Piéton, are the same as Medtronic USA Parent.[1]

---

[1] *See* https://www.wsj.com/market-data/quotes/MDT/company-people (screenshot of key people of Medtronic plc from Wall Street Journal) and https://www.medtronic.com/us-en/our-company/leadership.html (Medtronic website of leadership for Medtronic USA Parent).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

| Key People Medtronic PLC | |
| --- | --- |
| **Board of Directors** | |
| Name/Title | Current Board Membership |
| Geoffrey Straub Martha<br>Chairman & Chief Executive Officer | Medtronic Plc |
| Gregory P. Lewis<br>Independent Director | Medtronic Plc |
| Scott C. Donnelly<br>Independent Director | Medtronic Plc |
| **Executives** | |
| Geoffrey Straub Martha<br>Chairman & Chief Executive Officer | Gregory L. Smith<br>Executive VP-Global Operations & Supply Chain |
| Thierry Pieton<br>Chief Financial Officer & Executive Vice President | |

8.     Upon information and belief, Defendants are engaged in a joint enterprise to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, and are jointly and severally liable to Plaintiff for all damages resulting therefrom.  By way of example, and on information and belief, Defendant Medtronic USA Parent is the owner in all rights to the trademark "Medtronic" with the USPTO. Moreover, Medtronic patent rights appear to be spread across a variety of Medtronic subsidiaries, but under common control and direction. Indeed, Medtronic Ireland, Medtronic USA Parent and other Medtronic subsidiaries have all, at different occasions, brought IPR proceedings on behalf of Medtronic. Further, Medtronic USA Parent, Medtronic USA and other Medtronic subsidiaries have also brought enforcement actions on behalf of Medtronic numerous times in District Courts, for example, *Medtronic, Inc., Medtronic USA, Inc. et al v. Axonics Modulation Technologies, Inc.*, Case No. 8-19-cv-02115 (C.D. Cal. Nov. 9, 2019). Further, as noted above, the business headquarters for Defendants Medtronic Ireland, Medtronic USA Parent and Medtronic USA are the same.  Stull further, the Accused Instrumentalities are marketed in the same form, under the same names (*e.g.,* Medtronic), by all Defendants.  On information and belief, there exists written agreement(s) among and between Defendants governing the rights, duties, and responsibilities of each entity in their collective effort

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                3

to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, all to the harm of Plaintiff.

9.      Upon information and belief, Defendants therefore sell and offer to sell products and services throughout the United States, including in this judicial district, and introduce products and services into the stream of commerce that incorporate infringing technology, knowing that they would be sold in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

12.     Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District.  Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

13.     Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for numerous employees in this District, which Defendant has established,

ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

14.     As shown below, but only as limited examples, Defendant has employees in the Eastern District of Texas, including in Tyler, Longview, Sherman and Texarkana, Texas:



*See* https://www.linkedin.com/in/bill-hale-6506a9104/



*See* https://www.linkedin.com/in/tommy-hampton-02b63740/



*See* https://www.linkedin.com/in/staci-brown-b56670233/



*See* https://www.linkedin.com/in/shawntae-brown-6527526a/

15.    As shown above, all four of these employees are located in this District in Tyler, Longview, Sherman, and Texarkana, Texas. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

16.    Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

17.    Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

18.     Defendant has authorized sales/customer service agents in the Eastern District of Texas, who hold itself out as a Medtronic sales and customer service representees (collectively "Customer Agents").

19.     Defendant has a regular and established place of business in this District through the Customer Agents acting as agents. Defendant manifests assent to the Customer Agents that they shall act on Defendant's behalf and subject to its control, and the Customer Agents manifest assent or otherwise consent to act. Defendant maintains "interim control" over the Customer Agents' work, in which they rely on interactions and Defendant's instructions within the scope of their work.

20.     Although referenced as "distributors" or "channel partners," it is evidenced below these "distributors" and "channel partners" are truly sales and customer service agents for the Defendant. For Customer Agents to satisfy "compliance requirements," and for Medtronic to control its Customer Agents, Medtronic provides the following: Distributor Resources (Ex. 1), Reference Tools and Examples (Ex. 2), a Code of Conduct policy, Business Partner Compliance Guidelines (Ex. 3), a Conflict of Interest Declaration form to complete and return to Medtronic (Ex. 4), a Distributor Employee Training Attendance Form (Ex. 5), Notification on Use of Sub-Distributors form to complete and return to Medtronic (Ex. 6), a Due Diligence Quick Check form to complete and return to Medtronic (Ex. 7),  a Sample Code of Conduct to abide by (Ex. 8), an Expense Reimbursement Form (Ex. 9), a Samples Request form (Ex. 10), a Consulting Agreement Notification Letter to HCP's Employer form (Ex. 11), a Sponsorship Agreement (Ex. 12), a Grant or Donation Packet, an HCP Meeting, Event or Training Packet (Ex. 13), Regulatory and Quality Requirements (Ex. 14), and a Distributor Compliance Presentation (Ex. 15), all of which control and provide Customer Agents with  compliance and quality standards, training, sub-distributor

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                              8

rules, record keeping and inspection requirements, regulatory and quality requirements, conflicts of interest and other escalation requirements, instructions, marketing, brochures, training manuals, mandated policies and procedures, control agreements and contact information for sales and customer service agents, including the Customer Agents, by, in part, providing "Distributor Resources" for them, found at Ex. 1 and at https://www.medtronic.com/us-en/about/corporate-governance/distributor-compliance.html and shown, in part, below.



21.     Upon information and belief, to become an authorized distributor, including the Customer Agents, Defendant and the interested party sign the above agreements or agree to policies and procedure, including, but not limited to Exs. 1 to 15, in which the authorized distributor agrees to sell, train, oversee procedures, service, and maintain Defendant's new and existing customers' products, including those at issue here.

22.     By way of example of its control of Customer Agents, but by review of the Exhibits 1–15 is minimal to point to, Defendant controls all aspects of the set-up, inventory and sales for the

Customer Agents, as evidenced, in part, by its Business Partner Compliance Guidelines (Do's and Dont's (*see* Ex. 3) and shown in screenshots below. Customer Agents must abide by strict procedures, such as:

- **expenses**;

- **record keeping**;

- **product sample request and policies**;

- **marketing and gift giving procedures; and**

- **conflicts avoidance.**





23.    Therefore, the contracts between Defendant and the Customer Agents establish (1) Defendant has the right to direct and control the Customer Agents, (2) Defendant has manifested consent that Customer Agents act on its behalf, and (3) the Customer Agents have consented to act on behalf of Defendant.

24.    The Customer Agents sell, monitor, train, oversee use, and handle complaints and returns, as shown in Exs. 1–15), Medtronic products obtained from and on behalf of Defendant for customers in this District. Those activities involve storage, transport, training, monitor and exchange of goods and services and are part of Defendant's business.

25.    Defendant has established and ratified the Customer Agents' places of business because the contracts affect how they perform hospital set ups, approval of procedures to be performed at hospitals with Defendant products, sales, training, handling complaints, returns. *See* Exs. 1–15.

26.    The Customer Agents in this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them—authorized distributors in the United States.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                               11

27.     Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Customer Agents' locations by the regular, physical presence of its employees. *See* https://www.medtronic.com/us-en/about/corporate-governance/distributor-compliance.html ("Adjustments may be required to adapt to their business model, and to **ensure alignment with local** laws, regulations and trade association codes").

28.     Defendant ratifies the Customer Agents' locations because it exercises interim control over the Customer Agents' activities and holds out to the public that Defendant's distribution, warehousing, marketing and sales of the products are being performed at and by Customer Agents' locations in this District.

29.     Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Customer Agents' locations by the regular, physical presence of its employees.

30.     Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022); *IOT INNOVATIONS LLC, Plaintiff, v. MONITRONICS INTERNATIONAL, INC., d/b/a BRINKS HOME*, Defendant., No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted sub nom. Iot Innovations LLC v. Monitronics Int'l, Inc.*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

31.    Furthermore, venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Defendant Medtronic Ireland is subject to personal jurisdiction in this Judicial District, regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and they are not residents in the United States and may be sued in any judicial district.

### BACKGROUND AND PATENTS-IN-SUIT

32.    Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 11,298,153 ("the '153 Patent"), U.S. Patent 10,426,513 (the "'513 Patent") and U.S. Patent 9,820,771 (the "'771 Patent") (hereinafter collectively referred to as the "Patents-in-Suit"), relating to improved devices and methods for minimally invasive surgical procedures.

33.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

34.    The inventions described and claimed in the Patents-in-Suit were invented individually and independently by named inventors, Dr. Michael J. Norton and Noel D. Ischy.

35.    One of the inventors, Dr. Norton, is the co-founder and Vice President of Plaintiff, Axcess Instruments IP Holding Company. Dr. Norton is a board-certified General Surgeon in Tyler, TX where he has practiced for 32 years. After graduating from the University of Texas Southwestern Medical School in 1987, Michael trained under Dr Ernest Poulos at St Paul Medical Center in Dallas, Tx.  He moved to Tyler, TX in 1992 and has enjoyed a full career as a General Surgeon at Christus Mother Frances Hospital. During his career, Dr. Norton has served as President of the Medical staff and as Chief of Surgery. He continued his commitment to the medical community on the Board of Councilors and as President of the Smith County Medical Association. He has contributed to hospital leadership in multiple areas and is currently section chief of General Surgery and Chair of the Breast Program committee at Christus Mother Frances Hospital in Tyler.

36.     Dr. Norton was trained in laparoscopic surgery during residency and developed an interest in innovations for minimally invasive surgery. After significant research and development, Dr. Norton then founded Axcess Instruments Inc., specifically formed to develop techniques in Single Incision Laparoscopy with the AxcessPort. This was followed by integrating digital devices into the AxcessPort to optimize imaging and performance in surgical imaging. Dr. Norton has been granted 13 utility U.S. patents as well as several international patents for new and useful inventions.

37.     The Patents-in-Suit include numerous claims defining distinct inventions. As represented in Fig. 6 of the '153 Patent below, for example, the inventions generally relate to laparoscopic surgical procedures and in particular to an improved device and method for minimally invasive surgical procedures.



Figure 6

38. The priority date of the '153 Patent, the '513 Patent and the '771 is at least as early as March 3, 2006.  As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

39. Before the inventions of inventions of the '153 Patent, surgeons did not have an apparatus and method that would allow the surgeon to perform minimally invasive operations with body flanges having a smaller overall cross-section while allowing for triangulation within the patient. With the art available at the time before the inventions of the '153 Patent, many incisions were needed for body access openings thus increasing the pain caused by surgery and further increasing the recovery time and the risk of infection. *See* '153 Patent, Col. 1, l. 29-Col. 3, l. 14

40. Therefore, one aspect of the inventions of the '153 Patent consists of a "body flange" or "trans-axis-uniport" ("TAU") which is anchored to the body with a standard suture anchoring points. In turn, the body anchor contains a crisscrossed plurality of conduits which allow nonparallel introduction of equipment and/or instruments. The conduits may be parallel, nonparallel, straight or curved, but enter the body through one body opening. (It may be necessary during some procedures to have additional body openings). *Id.*, Col. 3, ll. 18-26.

41. The '513 Patent and the '771 Patent offered related improvements to the laparoscopic surgical procedures being performed at the time. Thus, the Patents-in-Suit are pioneering patents. Indeed, the '153, the '513 and the '771 Patents have been cited as relevant prior art in 323 subsequent United States Patent Applications, including by such technology leaders as Ethicon (Johnson & Johnson), Intuitive, Tyco, Applied Medical Resources, Stryker and Covidien.

## MEDTRONIC'S INFRINGING PRODUCTS

42. Upon information and belief, Medtronic makes, sells, advertises, offers for sale, uses, or otherwise provides single-port robotic surgical methods and systems, including, but not limited to, the SILS

Port ("Accused Instrumentalities"), that utilize the Patents-in-Suits' patented body port or body flange access devices and methods for performing laparoscopic surgery, as shown exemplarily below and attached as Exhibit 16 for the '513 Patent.

43. The SILS Port was developed by Covidien and approved by the FDA in 2009.[2] Medtronic acquired Covidien in 2014 for $42.9 billion.[3]

44. As exemplarily shown in more detail of Exhibit 16, Medtronic's Accused Instrumentalities include each and every limitation of the patents-in-Suit and at least, but not limited to, claim 1 of the '153 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

**COUNT I**
**Infringement of U.S. Patent No. 11,298,153**

45. Plaintiff incorporates the above paragraphs by reference.

46. Medtronic without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

47. Medtronic thus has infringed and continues to infringe at least claim 1 of the '153 Patent literally and/or under the doctrine of equivalents.

48. Medtronic has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '153 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing,

---

[2] *See* https://www.biospace.com/covidien-ltd-receives-fda-clearance-to-market-sils-port-multiple-instrument-access-port
[3] *See* https://news.medtronic.com/2014-06-15-Medtronic-to-Acquire-Covidien-for-42-9-billion-in-Cash-and-Stock

designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '153 Patent, without license or authority from Plaintiff. On information and belief, Medtronic knows that the induced acts constitute infringement of the '153 Patent.

49.    Medtronic individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '153 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '153 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '153 claims.

50.    Medtronic has been on actual notice of the '153 Patent at least as early as the filing of this Complaint. Moreover, Medtronic has been on actual notice of the '153 Patent at least as early as 2014, when it was cited in patent file histories of Covidien, the predecessor of the Accused Instrumentalities. Covidien's knowledge of the '153 Patent was assumed by Medtronic when it acquired Covidien. Medtronic's direct and indirect infringement of the '153 Patent has thus been committed with knowledge of the '153 Patent, making Medtronic liable for direct, indirect, and willful infringement.

51.    Furthermore, Medtronic received notice from an agent of Plaintiff's predecessor around 2018 of Plaintiff's patent portfolio, including the '153 Patent. Medtronic's direct and indirect infringement of the '153 Patent has thus been committed with knowledge of the '153 Patent, making Medtronic liable for direct, indirect, and willful infringement.

52.    Medtronic's infringement of the '153 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

53.     Plaintiff has been damaged because of the infringing conduct by Medtronic alleged above. Thus, Medtronic is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT II
## Infringement of U.S. Patent No. 10,426,513

55.     Plaintiff incorporates the above paragraphs by reference.

56.     Medtronic without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

57.     Medtronic thus has infringed and continues to infringe at least claim 1 of the '513 Patent literally and/or under the doctrine of equivalents.

58.     Medtronic has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '513 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '513 Patent, without license or authority from Plaintiff. On information and belief, Medtronic knows that the induced acts constitute infringement of the '513 Patent.

59.     Medtronic individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim

of the '513 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '513 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '513 claims.

60.   Medtronic has been on actual notice of the '513 Patent at least as early as the filing of this Complaint. Moreover, Medtronic has been on actual notice of the '513 Patent at least as early as 2014, when it was cited in patent file histories of Covidien, the predecessor of the Accused Instrumentalities. Covidien's knowledge of the '513 Patent was assumed by Medtronic when it acquired Covidien. Medtronic's direct and indirect infringement of the '513 Patent has thus been committed with knowledge of the '513 Patent, making Medtronic liable for direct, indirect, and willful infringement.

61.   Furthermore, Medtronic received notice from an agent of Plaintiff's predecessor around 2018 of Plaintiff's patent portfolio, including the '513 Patent. Medtronic's direct and indirect infringement of the '513 Patent has thus been committed with knowledge of the '513 Patent, making Medtronic liable for direct, indirect, and willful infringement.

62.   Medtronic's infringement of the '513 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

63.   Plaintiff has been damaged because of the infringing conduct by Medtronic alleged above. Thus, Medtronic is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.   Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          19

## COUNT III
### Infringement of U.S. Patent No. 9,820,771

65.    Plaintiff incorporates the above paragraphs by reference.

66.    Medtronic without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

67.    Medtronic thus has infringed and continues to infringe at least claim 1 of the '771 Patent literally and/or under the doctrine of equivalents.

68.    Medtronic has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '771 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '771 Patent, without license or authority from Plaintiff. On information and belief, Medtronic knows that the induced acts constitute infringement of the '771 Patent.

69.    Medtronic individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '771 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '771 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '771 claims.

70.    Medtronic has been on actual notice of the '771 Patent at least as early as the filing of this Complaint. Moreover, Medtronic has been on actual notice of the '771 Patent at least as early as

2014, when it was cited in patent file histories of Covidien, the predecessor of the Accused
Instrumentalities. Covidien's knowledge of the '771 Patent was assumed by Medtronic when it
acquired Covidien. Medtronic's direct and indirect infringement of the '771 Patent has thus been
committed with knowledge of the '771 Patent, making Medtronic liable for direct, indirect, and
willful infringement.

71.    Furthermore, Medtronic received notice from an agent of Plaintiff's predecessor around 2018 of
Plaintiff's patent portfolio, including the '771 Patent. Medtronic's direct and indirect infringement
of the '771 Patent has thus been committed with knowledge of the '771 Patent, making Medtronic
liable for direct, indirect, and willful infringement.

72.    Medtronic's infringement of the '771 Patent will continue to damage Plaintiff, causing irreparable
harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

73.    Plaintiff has been damaged because of the infringing conduct by Medtronic alleged above. Thus,
Medtronic is liable to Plaintiff in an amount that adequately compensates it for such infringement,
which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed
by this Court under 35 U.S.C. § 284.

Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to
collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as
follows:

1.    Declaring that Defendants have infringed the Patents-in-Suit;

2.    Awarding Plaintiff its damages suffered because of Defendants' infringement of the
Patents-in-Suit;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    21

3.     Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4.     An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of the Patents-in-Suit;

5.     Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the Patents-in-Suit;

6.     Awarding Plaintiff ongoing post-trial royalties for infringement of the Patents-in-Suit; and

7.     Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
    Texas Bar No. 24036607
    sfuller@ghiplaw.com
Randall Garteiser
    Texas Bar No. 24038912
    rgarteiser@ghiplaw.com
Christopher A. Honea
    Texas Bar No. 24059967
    chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF AXCESS INSTRUMENTS IP HOLDING COMPANY**